## DETWILER v. COX.

CANDLER, J.  The interest of a witness in the result of the suit may always be considered in passing upon his credibility; and where there are circumstances inconsistent with the truth of his testimony, the jury are not obliged to believe him, even though he is not contradicted by any other witness. *Laramore* v. *Minish*, 43 *Ga.* 282; *Penny* v. *Vincent*, 49 *Ga.* 473; *Amis* v. *Cameron*, 55 *Ga.* 449; *Armstrong* v. *Ballew*, 118 *Ga.* 168.

In the present case, which was a claim filed to the levy of an execution, it appeared that the property levied on was in possession of the defendant in fi. fa. at the time of the levy; that the deed to the property was made to him; and that he subsequently conveyed it to his wife, the claimant, pending the levy of the execution against him. The judge, acting as a jury, was therefore authorized to find that the property was not bona fide that of the wife, but that it belonged to the defendant and was subject to the execution, although the claimant and the husband swore to a state of facts which, if believed by the court, would have authorized a verdict finding the property not subject.    *Judgment affirmed.    All the Justices concur.*

Argued June 22, — Decided July 13, 1904.

Levy and claim.  Before Judge Spence.  Decatur superior court.  November 20, 1903.

An execution on a judgment rendered in April, 1900, in favor of J. M. Cox against William Detwiler, was levied on land in the village of Eldorendo, on April 9, 1901. A claim was interposed by the defendant's wife, Anna Detwiler. By consent the case was tried by the judge without a jury. It appeared that in January, 1901, the land was conveyed to William Detwiler, and that "in April, 1901," he made a deed to Anna Detwiler. William Detwiler testified: "The property was purchased with money that my wife drew out of the building and loan association; she had carried it nearly five years, — the Georgia State, of Savannah, and the Bankers, of Montgomery. She drew four hundred dollars out of these two associations, and, with that and the proceeds of the sale of two horses which had been sold to her by bill of sale by Troup Hines, this property in dispute was purchased. She drew the money out of the building and loan before it matured, for the express purpose of putting it in this property in dispute. The money was paid over to her by the building and loan association, which was the withdrawal value of that stock. This money that she got from the building and loan association was the fruits of my labor that I put in the building and loan association

in my wife's name, for her benefit. My wife paid for the property with that money. The money was given to my wife before this execution, for three or four or five years, as it was an accumulation. I didn't consider that I owed Mr. Cox anything at the time I gave this money to my wife. I think the debt, the foundation of this execution in favor of Mr. Cox, was made in 1889, and the judgment sued out in 1900. I think the loan association stock was taken out in '92 or '93, somewhere along there, and the assessments were paid by me out of my earnings. The money was withdrawn from the building and loan association, I think, four years ago, at the time I built my store at Eldorendo, at the time that deed was made to me by the Georgia Pine. I do not know why the title, the deed to that property, was put in my name. I put it there against my wife's protest. I don't know what I done it for, unless it was because I never had a deed to anything in my life, and I just wanted that in my name. I did not give this money to my wife for the purpose of defrauding any one. I gave it to her because I wanted to make some provision for her, and at that time I thought building and loan was a good investment. I think I carried the stock in the association for her nearly four years. I bought and built that store property in Eldorendo with the money arising from that source. In 1892 or '93, at the time I began to invest this money in the building and loan for my wife, I did not have any property." Mrs. Anna Detwiler testified that the money that bought the store and property on which it is situated at Eldorendo was her money, that she "got out of the building and loan." The court rendered judgment against the claimant. She moved for a new trial, on the ground that the verdict was contrary to law and the evidence. The motion was overruled, and she excepted.

*T. S. Hawes, J. R. Wilson*, and *Harrell & Hartsfield*, for plaintiff in error, cited Civil Code, §§ 3592, 3595; *Ga. Rep.* 113/1143; 17/220; 53/406 – 7; 55/497; 56/161, 538; 67/738–9; 82/684; 117/467.

*Townsend & Dickenson*, contra.